**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————— x

Yovani Palmeri, individually and on : 
behalf of all others similarly situated, : 
                              :   Case No.

        Plaintiff, :

v. :

                              :   **CLASS ACTION COMPLAINT**

PepsiCo, Inc. and Frito-Lay North America, Inc. :

                              :   <u>**JURY TRIAL DEMANDED**</u>

        Defendants. :

                              :

                              :

—————————————————— x

Plaintiff Yovani Palmeri ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendants PepsiCo, Inc. and Frito-Lay North America, Inc. ("Frito-Lay") (collectively "Defendants") and alleges upon personal knowledge as to herself and upon information and belief as to all other matters as follows:

<u>NATURE OF THE ACTION</u>

1. This case is about a simple mistruth printed on every bag of Frito-Lay's "Poppables" snack line: "No Artificial Flavors." That statement is categorically false.

2. Despite this straightforward claim, each of the Products at issue in this case contains citric acid, a synthetic flavoring agent manufactured not from fruit, as consumers might reasonably believe, but through use of black mold—specifically, *Aspergillus niger*.

3. This Manufactured Citric Acid is not naturally derived, is created using industrial fermentation processes, and is added to alter the taste of the food.

4.      Consumers like Plaintiff purchase snacks labeled "No Artificial Flavors" precisely because they wish to avoid synthetic, chemical, or laboratory-generated compounds that are added to change the taste or character of food.

5.      By including mold-derived citric acid for flavoring purposes and failing to disclose it as an artificial ingredient, Frito-Lay deceives consumers and violates New York's consumer protection laws.

FACTUAL BACKGROUND

6.      Defendants manufacture and sell the "Poppables" line of puffed potato snacks in various flavors, including Sea Salt, White Cheddar, Honey BBQ, Creamy Jalapeño, and Southwest Ranch, among others (the "Products").

7.      Each of the Products is uniformly labeled with the claim "No Artificial Flavors" in bold, conspicuous font on the front panel of the packaging.  An example appears below:



8.  Despite this representation, the Products contain citric acid, which is not extracted from citrus fruits but is instead synthetically manufactured.

9.  Manufactured Citric Acid—referred to in scientific literature as "MCA"—is a non-natural, industrially produced compound. It is not derived from any fruit or vegetable source and bears no meaningful relation to the naturally occurring citric acid found in citrus fruit.

3

10.     Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919.[1]

11.     Aspergillus niger is a well-known allergen and a common source of adverse reactions in individuals with mold sensitivities and related inflammatory conditions.

12.     Aspergillus niger is linked to Type I allergies, rhinitis and asthma as well as allergic sinusitis.[2]

13.     A study investigating 614 respiratory allergic patients reported that the frequency of positive skin test reactions to extracts of fungal spores of A. niger was 20.4%, one of the highest prevalence levels of fungal sensitization.[3]

14.     Another study regarding mold in homes of asthmatic children showed that Aspergillus niger was among the primary muld species that distinguished severely asthmatic children's homes and non-asthmatic children's homes[4].

15.     Manufactured citric acid is added to the Products for the purpose of imparting a distinctive sour and tangy flavor, particularly in flavors like White Cheddar, Honey BBQ, and Salt & Vinegar.

---

[1] Sweis IE, Cressey BC. Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports. Toxicol Rep. 2018 Aug 9;5:808-812. doi: 10.1016/j.toxrep.2018.08.002. PMID: 30128297; PMCID: PMC6097542.

[2] https://www.inspq.qc.ca/en/moulds/fact-sheets/aspergillus-niger (citing Shah, A. and Sircar, M. (1991). Sensitization to Aspergillus antigens in perennial rhinitis. Asian.Pac.J Allergy.Immunol. 9[2], 137-139.).

[3] *Id*. (citing Guneser, S., Atici, A., Koksal, F., and Yaman, A. (1994). Mold allergy in Adana, Turkey. Allergol.Immunopathol.(Madr.). 22[2], 52-54.)

[4] *Id* (citing Vesper, S., McKinstry, C., Haugland, R., Neas, L., Hudgens, E., Heidenfelder, B., and Gallagher, J. (2008). Higher Environmental Relative Moldiness Index (ERMIsm) values measured in Detroit homes of severely asthmatic children. Sci.Total.Environ. 394[1], 192-196.)

16.     Citric acid imparts a sour, tart taste to both food and drink and is particularly important in candies, soft drinks, and fruit juices.[5] This same functionality applies in the seasoning blends used in the Products.

17.     Consumers understand the phrase "No Artificial Flavors" to mean that a product does not contain synthetic or industrial flavoring agents. Citric acid produced from genetically modified mold, and added specifically to alter taste, does not qualify as "natural" or otherwise "non-artificial" under any reasonable definition.

18.     Plaintiff and the Class members paid a price premium based on Defendants' false statement that the  Products contain "No Artificial Ingredients."

19.     Because the Products do not contain "No Artificial Ingredients," Plaintiff and the Class Members did not receive a Product worthy of the price premium they paid.

20.     Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

21.     Frito-Lay's labeling of the Products is materially misleading and was reasonably relied upon by Plaintiff and other members of the Class in purchasing the Products.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) at least one member of the Class is a citizen of a state different from Defendant; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

---

[5] *See* Applications of Citric Acid in the Food and Beverage Industry;
https://www.coherentmarketinsights.com/blog/applications-of-citric-acid-in-food-and-beverage-industry-1099

23.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

24.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

25.     Plaintiff Yovani Palmeri is a citizen and resident of Staten Island, New York. In 2025, Plaintiff purchased the Products, including the White Cheddar, and Honey BBQ at brick and mortar retail stores in Staten Island.

26.     Defendant Frito-Lay North America, Inc. is a Delaware corporation with its principal place of business located at 7701 Legacy Drive, Plano, Texas 75024. Frito-Lay manufactures, markets, distributes, and sells snack foods, including the Poppables product line, throughout the United States, including within this District.

27.     Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.  PepsiCo is the sole owner of Defendant Frito-Lay North America, Inc. and exercises complete control over the marketing of its line of products, including the Products in this case.

## CLASS ALLEGATIONS

28.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling

practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

29.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

30.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

31.     The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

32.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

33.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

34.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

        a.    Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

        b.    Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful

business practices with respect to the advertising, marketing, and sale of its Products;

      c. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

      d. Whether Defendants' false and misleading statements and omissions concerning its Products were likely to deceive the public; and

      e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

35. <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

36. <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members she seeks to represent, his consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

37. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

38. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

    f. This class action will assure uniformity of decisions among Class Members;

    g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

   i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase its Products.

39. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

<strong><u>CLAIMS</u></strong>

<strong><u>FIRST CAUSE OF ACTION</u><br><u>VIOLATION OF NEW YORK GBL § 349</u><br>(On Behalf of Plaintiff and New York Subclass Members)</strong>

40. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

41. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

42. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

43. There is no adequate remedy at law.

44. Defendants misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

45. Defendants' improper consumer-oriented conduct— falsely claiming that the Products contain "No Artificial Flavors"—is misleading in a material way in that it, *inter alia*,

10

induced Plaintiff and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

46. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Plaintiff and the New York Subclass Members paid a premium based on the representation that the Products contain "No Artificial Ingredients," which was false. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

47. Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

48. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

49. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

50. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

51. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

52. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

53. Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it falsely claims that the Products contain "No Artificial Flavors."

54. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

55. Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

56. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

57. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

58.     Defendants made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

59.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

60.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

61.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

62.     When Plaintiff and the Class Members paid for the Products, they unknowingly paid money for Products which were misbranded.

63.     Defendants should not be legally permitted to retain monies earned from the sale of Products which are illegal to sell.

64.     Equity and good conscience requires Defendants to refund Plaintiff and the Class Members for the price paid for the Products.

65.     Defendants' retention of those funds would be unjust and inequitable as Defendants should not be rewarded for the sale of Products which are illegal to sell.

66.     As such, Defendants are liable for unjust enrichment.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: September 25, 2025

**FURIA LAW, LLC**

By: _____

Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel : 646-830-1915
furiap@furiafirm.com

*Counsel for Plaintiff and the Class*

14